**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| JOHN H. HEDGER, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-1139 |
| ) | |
| RELIANCE STANDARD ) | |
| LIFE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This case comes before the Court on Plaintiff's Motion for Judgment on the Administrative Record and Defendant's Motion for Summary Judgment.

This case arises out of a claim for long term disability benefits that Plaintiff filed pursuant to his employer's disability plan. Plaintiff is a participant in the Group Long Term Disability Insurance Program ("Plan") established by Peninsula Orthopaedics Association and insured by Defendant. The Plan is regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1461. Plaintiff filed this Complaint seeking relief, under ERISA, from Defendant's denial of his application for long term disability benefits.

Plaintiff was employed as an orthopaedic surgeon at

Peninsula Orthopaedic Association from July 10, 1980 until August 2, 2001.  He was diagnosed with diabetes in 1986 and continued working as an orthopaedic surgeon with Peninsula until August 1, 2001.  On August 2, 2001, Plaintiff ceased performing surgery allegedly due to diabetic episodes producing low glucose levels, tremors, dizziness, muscle fatigue, and cramping.  Accordingly, Peninsula terminated Plaintiff's position as an orthopaedic surgeon and subsequently rehired him as an internist and practice manager.

Plaintiff filed a claim for disability benefits asserting therein that complications from his diabetes had caused him to feel increasingly faint during surgery over the course of the preceding few years and ultimately precluded him from performing surgical procedures.  In support of his claim, Plaintiff submitted an evaluation completed by his endocrinologist, Dr. Jack Snitzer.  In his evaluation, Dr. Snitzer recorded a diagnosis of insulin dependant diabetes mellitus and noted that Plaintiff's symptoms included low blood sugar causing tremors.  Plaintiff also cited as evidence of his disability, a hypoglycemic episode that occurred on May 9, 2001, the severity of which prevented him from completing a surgical procedure.  Plaintiff also noted the degenerative nature of his condition as evidenced by his transition from intravenous administration of insulin to the use of an insulin pump beginning on September 13,

2001.

Defendant denied the initial claim for benefits.  In so doing, it stated that Plaintiff's condition did not fall within the purview of the Plan's definition of Total Disability. Specifically, it stated that, based upon the medical information submitted in support of his claim, Plaintiff's condition did not prevent him from performing the material duties of his regular occupation and that Plaintiff had failed to demonstrate the existence of any qualifying impairment during the sixty day elimination period as required by the Plan.

Plaintiff appealed Defendant's denial of benefits.  Before Defendant in its second review was an additional letter from Dr. Snitzer in which he noted the persistence of Plaintiff's tremulousness occasioned by unpredictable episodes of low blood sugar and again cited the May 9, 2001 episode as evidence of Plaintiff's inability to perform surgery.  Additionally, Defendant submitted Plaintiff's medical records for peer review by Dr. William Haupman, an independent examiner.  Based upon Dr. Haupman's evaluation in conjunction with Dr. Snitzer's submissions, Defendant upheld its original denial of benefits. In so doing, Defendant stated that Plaintiff's medical documentation indicated that there had been no substantial change in Plaintiff's condition that would warrant concession of disability benefits.  Defendant noted that Plaintiff's own

physician consistently characterized the nature of his condition as mild and his hypoglycemic episodes as occasional. Defendant cited Dr. Haupman's conclusion that Plaintiff had a "longstanding history of diabetes during which [he] was able to continue operating and during this time interval as early as March 15, 1999, medical records document occasional mild reaction. Therefore, the appearance of occasional mild low glucose reaction does not represent a change in the patient's underlying medical condition around the date of loss." Dr. Haupman's report also noted that Plaintiff's condition was sufficiently mild as to allow for scheduled monitoring and maintenance through the administration of insulin and adjustment in food intake.

Moreover, Dr. Haupman noted that the insertion of the insulin pump during the elimination period provided Plaintiff with greater control over the monitoring and maintenance of his glucose levels and stated that "the records clearly document that after instituting the insulin pump, the patient's episodes of low blood sugars were 'very few' and 'very mild' and 'not significant.'" He concluded that such mild and infrequent episodes of low glucose occurring at predictable times of the day were inconsistent with impairment sufficient to constitute total disability. Plaintiff and Defendant seek summary judgment on the administrative record and agree that there are no material facts in dispute.

4

Summary judgment is appropriate where an examination of "the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Id. at 322-23. The party opposing the motion must then offer evidence sufficient to demonstrate the existence of a material issue for trial. Id.

Both parties agree that the Plan's language confers upon Defendant, discretionary authority to determine eligibility for benefits and, consequently, this Court reviews Defendant's decision for abuse of discretion. Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997); Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80, 85 (4th Cir. 1993); De Noble v. Vitro Corp., 885 F.2d 1180, 1186 (4th Cir. 1989). The degree of deference accorded under the abuse of discretion standard must be tempered, however, because Defendant, as both fiduciary of the Plan's beneficiaries and the Plan's insurer, labors under a conflict of interest. Expounding upon this modified abuse of discretion standard, the Fourth Circuit explained that:

> [W]hen a fiduciary exercises discretion in interpreting a disputed term of the contract where

5

> one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

Ellis, 126 F.3d at 233 (quoting Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir. 1990)).

In such situations, reviewing courts are limited in two significant aspects. First, the administrative denial of benefits may not be disturbed if it was reasonable, that is, the product of a "deliberate, principled reasoning process and...supported by substantial evidence." Bernstein v. CapitalCare, 70 F.3d 783, 788 (4th Cir. 1995). The quantum of evidence required to qualify as "substantial" is not great, "it must be more than a scintilla, yet somewhat less than a preponderance." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984).

The Fourth Circuit, in Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 342 (4th Cir. 2000), set forth various factors to be evaluated in assessing the reasonableness of an administrative denial of benefits. Pursuant to the Fourth Circuit's pronouncement in Booth, the court may consider the language of the plan, the purposes and goals of the plan, the adequacy of the

material considered to make the decision and the degree to which they support it, whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan, whether the decision making process was reasoned and principled, whether the decision was consistent with the procedural and substantive requirements of ERISA, any external standard relevant to the exercise of discretion, and the fiduciary's motives and any conflict of interest it may have. Id. at 343.

Second, the district court may review only the evidence that was before the plan administrator when it denied the claim at issue. Bernstein, 70 F.3d at 788. In the instant case, this Court finds that an administrator free of Defendant's conflict of interest would have acted reasonably in denying benefits based upon the undisputed facts of this case.

The plain language of the Plan at issue clearly contemplates denial of claims by insureds who are not "Totally Disabled" pursuant the definition contained therein.  That definition provides that:

> "Totally Disabled" and "Total Disability"
> mean that as a result of an Injury or
> Sickness:
> (1) during the elimination period and the
> first 24 months for which a Monthly benefit
> is payable, an Insured cannot perform the
> material duties of his/her regular
> occupation;
>   (a) "Partially Disabled" and Partial
>       Disability" mean that as a result

>             of an Injury or Sickness an Insured
>             is capable of performing the
>             material duties of his/her
>             occupation on a part-time basis or
>             some of the material duties on a
>             full-time basis.  An Insured who is
>             Partially Disabled will be
>             considered Totally Disabled, except
>             during the Elimination Period
>     (b)     "Residual Disability" means being
>             Partially Disabled during the
>             Elimination Period.  Residual
>             Disability will be considered Total
>             Disability...

In order to qualify for long term disability benefits under this definition, Plaintiff must demonstrate his total disability during the sixty day elimination period following the date of the onset of his alleged disability.  As Plaintiff claimed total disability beginning on August 2, 2001, his elimination period extended from August 2, 2001 through October 1, 2001.

The record in this case is devoid of any evidence that Plaintiff suffered a hypoclycemic episode during the elimination period.  The record further indicates that Plaintiff's own physician consistently characterized his condition as mild and his diabetic episodes as occasional.  Moreover, Plaintiff's claim relies heavily on the alleged severity of one diabetic episode that occurred on May 9, 2001, before both the onset of the disability that is the subject of his claim and the commencement of the sixty day elimination period that is relevant to its evaluation.  The record demonstrates that Plaintiff had

experienced mild diabetic episodes for a period of at least three years prior to August 2, 2001 and, barring the isolated episode cited above, was able to complete all surgical procedures prior to that date.  Plaintiff also remained employed by Peninsula and continued to treat patients in a non-surgical capacity during the elimination period.

The record reflects that Plaintiff's ability to control his condition improved during the elimination period upon the insertion of the insulin pump.  The evaluations of both Dr. Snitzer and Dr. Haupman demonstrate that Plaintiff suffered no deterioration or other change in his condition prior or subsequent to the date of his claim.  Plaintiff had suffered from diabetic episodes for at least three years preceding the date of his claim.  During that period, he was consistently able to execute the duties of his occupation.  The fact that there was no notable deterioration in his condition belies the assertion that he was totally disabled within the meaning of the Plan.  Contrary to Plaintiff's assertion, Defendant's reliance on one of two allegedly conflicting medical evaluations is, as a matter of law, insufficient to constitute abuse of discretion.  Elliott v. Sara Lee Corp., 190 F.3d 601, 606 (4th Cir. 1999).  This is particularly so when Plaintiff's own physician's characterization of his condition as mild and occasional casts doubt upon the severity of his affliction.

Further, Plaintiff is also precluded from recovering under the Plan as he has produced no evidence to demonstrate that he is unable to perform the material duties of his occupation as required under the disability provision.  Plaintiff's claim rests upon the assumption that the performance of surgery is the only material duty of his occupation as an orthopaedic surgeon. However, relevant case law from other courts counsels in favor of a contrary conclusion.  Courts addressing this question have concluded that preclusion from performing surgery is not dispositive of total disability in cases such as the one at bar. Yahiro v. Northwestern Mut. Life Ins. Co., 168 F.Supp.2d 511 (D. Md. 2001); Dym v. Provident Life and Acc. Ins. Co., 19 F.Supp.2d 1147 (S.D. Cal. 1998).

Defendant submitted Plaintiff's claim to a Vocational Review which determined that surgery was not the only material duty associated with Plaintiff's occupation.  The administrative record before this Court contains an excerpt from Defendant's literature regarding benefits.  That passage enumerates the primary tasks associated with the occupations of general and orthopaedic surgeons.  Three of the four duties associated with the practice of orthopaedic surgery are non-surgical and include the examination of patients and surgical risk assessment, review of medical history, and the examination of instruments. Defendant identifies the duties of a general surgeon as the

analysis of patient history, clinical research, coordination of medical staff, examination of instruments, and the issuance of referrals. Additionally, orthopaedic surgeons routinely perform other non-surgical duties. Orthopaedists commonly render consultations, provide non-surgical treatment of fractures and dislocations, and perform clinical patient evaluations.

Plaintiff presented no evidence that suggests an inability to perform the non-surgical duties that are material to his occupation. The record clearly indicates that, throughout the evaluation period, Plaintiff continued to engage in the clinical, non-surgical practice of orthopaedic medicine. He also remains employed as an internist and office manager, and continues to treat patients.

Both the case law and the standards upon which Defendant relied in issuing the denial of benefits, support the conclusion that the performance of surgery is but one among various duties that are material to the practice of orthopaedic surgery and which Plaintiff remains fully capable of performing. Moreover, according to his own physician, Plaintiff's disability precludes him only from performing surgical duties, thus lending further support to the conclusion that he is able to perform all other material duties of an orthopaedist.

In light of the foregoing, the undisputed facts demonstrate that Defendant based its decision on a substantial quantum of

evidence and consequently, even under a modified abuse of discretion standard, this Court finds no basis for disturbing the administrator's determination regarding Plaintiff's long term disability benefits.

An appropriate Order shall issue.

/s/

_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
June 24, 2005